IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

YASHWANTH VEMPATI,

            Plaintiff,

vs.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES and UR
JADDOU, DIRECTOR,

            Defendants.

4:21-CV-3269

MEMORANDUM AND ORDER

The plaintiff, Yashwanth Vempati, applied for a green card, but that application hasn't yet been adjudicated. Filing 11 at 39. So, the plaintiff is suing the government—specifically, U.S. Citizenship and Immigration Services (USCIS) and its director, Ur Jaddou—asserting that the delay in adjudicating that application is unlawful. *See* filing 11. And the plaintiff has moved for preliminary injunctive relief. Filing 19. The government opposes that relief, and has moved to have the plaintiff's complaint dismissed. Filing 28. The Court will grant the government's motion.

## I. BACKGROUND

The statutory and regulatory scheme here is complex but the gist is actually relatively straightforward: generally speaking, immigrant visas—or, colloquially, green cards—are limited to (1) family-sponsored immigrants, (2) employment-based immigrants, or (3) diversity immigrants. 8 U.S.C. § 1151(a). Diversity immigrants get 55,000 green cards each fiscal year. § 1151(e). At least 226,000 family-sponsored green cards are available to non-immediate

relatives each fiscal year.[1] § 1151(c). And the number of employment-based green cards available each year is 140,000 *plus* the number of unused family-sponsored green cards from the previous fiscal year. § 1151(d).

In other words, the statutory scheme also contemplates the possibility of green cards going unused. So, for instance, if all the available family-sponsored green cards aren't used during one fiscal year, they "roll over" to the next year as *employment-based* green cards, available in addition to the usual annual limit. § 1151(d)(2)(C).

But there is also a cap on the total number of family-sponsored and employment-based green cards that can be issued each year to natives of any one country, equal to 7 percent of the total number of visas available that year in each category. 8 U.S.C. § 1152(a)(2). As a practical matter, the per-country limit has meant long waits for natives of certain countries—in this case, China and India—from which demand for green cards is high. *See* filing 11 at 31. When there are extra, unclaimed green cards, they're not subject to the per-country limit. § 1152(a)(5)(A). But the "rollover" provision hasn't been much help to employment-based immigrants, because family-sponsored green cards are in high demand. Filing 11 at 33.[2]

At least, not until last year. As with so many things, the COVID-19 pandemic disrupted regular patterns: 122,000 family-sponsored green cards went unused in FY2020 and rolled over into extra employment-based green

---

[1] The total number of family-sponsored green cards is 480,000, minus other categories including visas for immediate relatives of citizens. § 1151(c)(4)(B). But as a practical matter, because so many immediate relatives receive visas each year, the number available to non-immediate relatives is always the statutory minimum of 226,000. Filing 11 at 31.

[2] The Court relies on the plaintiff's complaint for a description of the practical effects of these statutes, but they don't seem to be disputed by the government.

cards for FY2021. Filing 11 at 34. This was a potential windfall for Chinese and Indian applicants who were otherwise facing a long queue through the 7-percent annual limit. Filing 11 at 34. And many applied.

So, according to the plaintiff, "approximately 273,000 employment-based green card applications were pending as of March 31, 2021." Filing 11 at 35. But according to the plaintiff, "USCIS was inadequately prepared to deal with the volume of applications that it received" and "[i]ts mailroom operations experienced unprecedented backlogs." Filing 11 at 34-35. And this is, the plaintiff alleges, "part of a trend" of longer wait times that predated the pandemic. Filing 11 at 36.

The plaintiff sued. Filing 11. The plaintiff's first, second, and fourth claims for relief assert that USCIS's actions with respect to adjudication of the plaintiff's application were unreasonably delayed, unlawfully withheld, or arbitrary and capricious, permitting review under the Administrative Procedure Act (APA). *See* filing 11 at 40-42 (citing 5 U.S.C. § 706(1) & (2)(A)). The third claim for relief purportedly arises under the Mandamus Act, 28 U.S.C. § 1361. Filing 11 at 42-43. And the fifth claim for relief is that USCIS acted arbitrarily and capriciously in not reserving a green card number for each applicant at the time of application, as it does with applications for some other documents. Filing 11 at 43-44.

The complaint asked the Court to order USCIS to adjudicate the plaintiff's adjustment-of-status applications before September 30, 2021. Filing 11 at 44. That request is obviously moot.[3] Alternatively, the plaintiff asks the Court to order USCIS to "hold" extra employment-based green cards to FY2022, or order USCIS to change its interpretation of green card allocation

---

[3] This case was only transferred to this Court on the afternoon of September 29, 2021, *see* filing 38, and this Court didn't have an opportunity to address it before the end of FY2021.

such that a green card number is "used" or "reserved" at the time of initial application. Filing 11 at 44-45. And the plaintiff moved for preliminary injunctive relief mirroring the prayer made in the complaint. *See* filing 19. The government opposes that relief and moves to dismiss the complaint. Filing 28.

## II. STANDARD OF REVIEW

The vehicle for dismissing a complaint, for lack of subject matter jurisdiction or failure to state a claim, is Fed. R. Civ. P. 12(b). A motion pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction, and the party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings, accepts all factual allegations in the pleadings as true, and views them in the light most favorable to the nonmoving party. *Id.*; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).

Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label*, 793 F.3d at 914. Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court. *Id.* But factual challenges do not arise only when a court considers matters outside the pleadings. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). A district court engages in a factual review when it inquires into and resolves factual disputes. *Id.*

Here, both parties have adduced evidence with respect to the motion to dismiss. *See* filing 28; filing 32. Accordingly, the Court understands this to be a factual attack, and in assessing its jurisdiction the Court will consider the parties' evidence to the extent relevant.

## III. DISCUSSION

The government contends that the plaintiff lacks standing to pursue these claims, and that the Court lacks subject-matter jurisdiction to consider them. The Court agrees on both points, and will begin with yet another: although it's not the plaintiff's fault, this case has been mooted by the end of FY2021. And finally, the Court agrees with the government that injunctive relief would be inappropriate regardless.

### 1. MOOTNESS

Mootness relates to justiciability, presenting a jurisdictional bar to the Court's power to hear the case. *Bacon v. Neer*, 631 F.3d 875, 877 (8th Cir. 2011). "Through the passage of time and the occurrence of irrevocable events, disputes may disappear so that federal courts no longer can grant effective relief. When this happens, the issue is moot and a federal court has no power to decide the issue." *Lebanon Chem. Corp. v. United Farmers Plant Food Inc.*, 179 F.3d 1095, 1099 (8th Cir. 1999) (citation omitted); *see Calderon v. Moore*, 518 U.S. 149, 150 (1996). And because mootness relates to justiciability and the Court's power to hear a case, the Court must consider it even though the parties have not raised it. *Bacon*, 631 F.3d at 877.

To the extent that the plaintiff sought to compel USCIS to act before the end of FY2021, the dispute is obviously moot. *See* 31 U.S.C. § 1102. But what's less clear is the extent to which the plaintiff's requests for alternative relief remain live. By operation of law, the additional green cards the plaintiff sought

to recapture became family-sponsored green cards last week (or, as the plaintiff alleges, they "evaporate[d]," which seems even more irrevocable). *See* filing 32 at 1. Can the Court do anything about that?

The Ninth Circuit says not: in *Xi v. Kerry*, that court held that mootness precluded a plaintiff's request to recapture employment-based visa numbers from a previous fiscal year. 710 F.3d 995, 1001-02 (9th Cir. 2013). The Court of Appeals explained that

> Congress has established annual numerical limits on the number of immigrant visas. There are a very limited number of situations when a visa number is returned to [the State Department] for reallocation, such as when an immigrant is deported, when an immigrant does not apply for admission to the United States before the expiration of the visa, and when an immigrant visa is revoked. However, even in those situations, [the State Department] must reallocate the visa numbers within the fiscal year in which the visa was issued. There is no statute or regulation authorizing [the State Department] to take a visa number from one year and allocate it to another year. Just as in the diversity visa lottery program, the employment-based visa numbers available in a particular fiscal year expire at the end of the year, rendering moot any claim for a visa number from a prior year. It does not matter whether administrative delays and errors are to blame for an alien not receiving a visa number on time. Once a visa number is gone, it cannot be recaptured absent an act of Congress. Any other interpretation of the statute would allow statutory limits on levels of immigration in a particular fiscal year to be exceeded as the

> result of treating all unused visa numbers from the past as
> cumulatively available to be allocated at any time.

*Id*. (citations and quotations omitted). "Thus," the Ninth Circuit concluded, "because employment-based visa numbers expire at the end of a fiscal year, a court cannot order an agency to recapture those numbers contrary to Congress's clear statutory command." *Id*. at 1003.

The Court agrees: there is no suggestion that the statutory limits on immigration are themselves unlawful, and the plaintiff has directed the Court to no authority for ordering USCIS to violate an otherwise lawful statute (particularly to the extraordinary extent needed to carry over approximately 90,000 green cards to another fiscal year without reducing the number that would already have been available, which is what the plaintiff is asking for). In other words, the Court's ability to grant the plaintiff any meaningful relief ended on October 1, and this case is moot.

## 2. STANDING

The government also argues that the plaintiff lacks standing. Filing 28-1 at 20. U.S. Const, Art. III confines the federal judicial power to the resolution of "Cases" and "Controversies," and for there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). And to demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: "What's it to you?" *Id*. (citation omitted).

> To answer that question in a way sufficient to establish standing,
> a plaintiff must show (i) that he suffered an injury in fact that is
> concrete, particularized, and actual or imminent; (ii) that the

injury was likely caused by the defendant; and (iii) that the injury
would likely be redressed by judicial relief. If the plaintiff does not
claim to have suffered an injury that the defendant caused and the
court can remedy, there is no case or controversy for the federal
court to resolve.

*Id*. The defects in the plaintiff's case here can be characterized using any of
those three requirements.

Accordingly, it's easier to start, not with the standing rubric, but simply
a description of the plaintiff's claim: while the plaintiff complains about delay
in adjudicating adjustment of status, the *injuries* alleged by the plaintiff flow
from the purported opportunity to have that application granted in FY2021.
But that alleged injury rests on pure speculation: that the plaintiff *would* have
been issued an FY2021 green card had applications been more expeditiously
processed, but *won't* be issued an FY2022 green card absent judicial
intervention. There's no good reason to accept either…at this point.

Certainly, the plaintiff's odds might have improved if 90,000 more green
cards had issued, but that's not the sort of concrete and particularized injury
that standing requires: a "concrete" injury must be "*de facto*"—that is, it must
actually exist—and a "particularized" injury must affect the plaintiff in a
personal and individual way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548
(2016). An allegation of future injury may suffice if the threatened injury is
certainly impending, or there is a substantial risk that the harm will occur, *see*
*Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021), but there
is no way to assess any individual green card applicant's chances on the record

before the Court in this case.[4] Nor, when the injury itself is speculative, can its cause be assessed. And finally, there is no assurance that, even if the Court granted the relief sought by the plaintiff, the plaintiff would benefit. Certainly, *someone* might benefit—but for purposes of redressability, remedies operate with respect to specific parties, not on legal rules in the abstract. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021).

### 3. SUBJECT-MATTER JURISDICTION

The government also directs the Court to several statutory provisions which, according to the government, deprive the Court of jurisdiction to review discretionary decisions made by the Attorney General and his delegates. Filing 28-1 at 23-32. And the plaintiff, the government argues, is challenging precisely such a discretionary decision. Filing 28-1 at 23-24. The Court agrees.

The APA confers a right to judicial review on "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "[A]gency action" includes "failure to act." 5 U.S.C. § 551(13). And a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But other statutes can preclude judicial review, and judicial review is unavailable when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). A claim under § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 124 S. Ct. 2373, 2379 (2004).

---

[4] And, in fact, to the extent that it is ascertainable, the government's evidence suggests that there is nothing the Court could do to recapture unused FY2021 green cards that would change the odds for Chinese and Indian applicants in FY2022. Filing 28-4 at 4.

"[D]elay cannot be unreasonable with respect to action that is not required." *Id*. at 2379 n.1.

Furthermore, specific to immigration: issuance of a employment-based green card occurs pursuant to 8 U.S.C. § 1255(a), and "no court shall have jurisdiction to review. . . any judgment regarding the granting of relief under section. . . 1255[.]" 8 U.S.C. § 1252(a)(2)(B)(i). Nor does the Court have jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [subchapter II of the Immigration and Naturalization Act (INA), 8 U.S.C. §§ 1151-1382] to be in the discretion of the Attorney General or the Secretary of Homeland Security." § 1252(a)(2)(B)(ii).

The issue presented by these statutes is whether issuance of a green card—that is, adjustment of status to that of permanent resident—is a discretionary decision. And § 1255(a) provides that the status of an alien may be adjusted

> by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

It's hard to imagine statutory language that would more clearly describe a discretionary decision, and when a statute specifies that a decision is wholly

discretionary, regulations or agency practice will not make the decision reviewable. *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016).[5]

The plaintiff's response to that authority misses the point. The plaintiff doesn't dispute the government's interpretation of the relevant statutes, but rather attempts to "point to the inapplicability of this line of reasoning in a case as this." Filing 32 at 15. The plaintiff asserts that

> 90,000 immigrant visas will expire at the end of this fiscal year, and Plaintiffs timely filed a complaint for the unreasonable delay in adjudicating these visas. Plaintiffs could not bring the case in January or February, as no unreasonable delay had occurred, and Plaintiffs had no reason to believe Defendants would fail to adjudicate so many applications. Absent intervention from this Court, 90,000 visas will expire, and with them, a backlog that extends for decades will grow even longer. Defendants have failed in their duty to adjudicate the matters before them, and this Court, in equity, has the power to remedy this harm.

Filing 32 at 16.

But that "response" is, in essence, a non-response. The plaintiff does not dispute that statutorily, the Court lacks jurisdiction to review discretionary decisions made by an administrative agency and, particularly, under the relevant provisions of the INA. Nor does the plaintiff dispute that the relevant decision is committed by statute to the agency's discretion. Instead, the

---

[5] Review of discretionary decisions *may* be permitted under the APA if the agency has an established policy governing its exercise of discretion, but § 1252(a)(2)(B)(ii) is more prohibitive. *Abdelwahab v. Frazier*, 578 F.3d 817, 821 n.6 (8th Cir. 2009).

defendant's argument amounts to asserting that bad things will happen unless the Court acts. But adverse consequences ensue from discretionary decisions all the time, which is presumably *why* they are insulated from judicial review and committed to the branches of government which are accountable to voters. Just because a decision has consequences doesn't mean it's not discretionary.

The plaintiff also asserts that "the failure to adjudicate approximately 90,000 immigrant visas, and thus let them expire, is contrary to Congressional intent in enacting the immigrant visa system." Filing 32 at 16. That argument might be more persuasive if the plaintiff could point to any statutory provision that may prevent it from occurring. Reasonable jurists may disagree about the propriety of textualism vs. purposivism, but even purposivism depends on the existence of some interpretable statutory text. *E.g. United States v. Am. Trucking Ass'ns*, 60 S. Ct. 1059, 1063-64 (1940). The plaintiff directs the Court to none—particularly none sufficient to confer jurisdiction on the Court that's been quite expressly curtailed by Congressional action.[6]

---

[6] The plaintiff also cites *Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2021), for the proposition that § 1252(a)(2)(B)(ii) "is not an absolute bar to review of immigration delays[.]" But *Gonzalez* hurts the plaintiff far more than it helps: in that case, the Fourth Circuit held that the plaintiffs' claims that USCIS "the agency unreasonably delayed or unlawfully withheld adjudication of their applications for work authorization while they were waiting to be placed on the wait list" for a U-Visa (which covers aliens who are victims of serious crime and cooperate with police) were non-reviewable because the statute authorizing such adjudication was clearly discretionary. *Id.* at 365-74. A different set of claims *was* reviewable, because Congress had mandated implementing regulations and those regulations committed the agency to act. *Id.* at 374 n.10. Even if such a regulatory cabin would suffice to make a decision non-discretionary in the Eighth Circuit—*but see Abdelwahab*, 578 F.3d at 821 n.6— the plaintiff points to no comparable limitations here.

Nor does the Mandamus Act help the plaintiff: "Mandamus may issue under § 1361 against an officer of the United States only in extraordinary situations and when the plaintiff can establish (1) a clear and indisputable right to the relief sought, (2) that the state officer has a nondiscretionary duty to honor that right, and (3) there is no other adequate remedy." *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016) (citations and quotations omitted). "In order for mandamus to lie, the duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt." *Id.* A discretionary action is no more reviewable in mandamus than under the APA. *See Norton*, 124 S. Ct. at 2379; *see also Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 461-63 (8th Cir. 2018).

### 4. PRELIMINARY INJUNCTIVE RELIEF

The Court's conclusions above are, obviously, dispositive of this case in a number of ways. But for the sake of completeness, the Court will also make the following findings with respect to the plaintiff's request for preliminary injunctive relief.

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties, and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). No single factor is dispositive, and the burden is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

(a) Likelihood of Success on the Merits

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show more than a 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). And the Court finds little likelihood of success on the merits here, even assuming the plaintiff states a claim at all.

Most of the plaintiff's arguments are predicated on the factors articulated in *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*). *See* filing 11 at 37; *see also Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014). *TRAC* provides that:

1.    The time agencies take to make decisions must be governed by a "rule of reason."

2.    Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.

3.    Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake.

4.    The Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority.

5. The Court should also take into account the nature and extent of the interests prejudiced by delay.

6. The Court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

750 F.2d at 80. And applying that standard, there is little to show that the delays at issue here are unreasonable.

Neither side has explained to the Court precisely how different employment-based green card applications are prioritized by USCIS. Instead, the plaintiff simply asserts that "[t]he rule of reason suggests that USCIS's processing of employment-based adjustment of status applications according to its published timelines constitutes an unreasonable delay." Filing 11 at 38. But that just asserts the conclusion the plaintiff is trying to prove. The government's evidence is that the processing times for applications at the Lincoln, Nebraska service center range from about 11 to 23 months. Filing 28-2 at 3. And the government's evidence indicates that the overall processing times can vary for each applicant depending on individual factors such as whether the application is deniable on its face, whether an interview is required, and whether the applicant has provided all the necessary documentation up front or whether additional evidence must be requested. *See* filing 28-3 at 2; filing 28-4 at 6-7.

Where the parties really disagree, on this point, is whether there are any statutory or regulatory provisions that establish a timetable for making adjustment-of-status decisions. The plaintiff points to 8 U.S.C. § 1571(b), which provides in relevant part that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. . . ." Courts have held, however,

- 15 -

that this "sense of Congress" is precatory, not binding. *See Kurakula v. Renaud*, No. 4:20-CV-3131, 2021 WL 308189, at *4 (D. Neb. Jan. 29, 2021); *Bemba v. Holder*, 930 F. Supp. 2d 1022, 1031 (E.D. Mo. 2013); *see also Pourshakouri v. Pompeo*, No. 20-cv-402, 2021 WL 3552199, at *9 (D.D.C. Aug. 11, 2021); *Jain v. Renaud*, No. 21-CV-3115, 2021 WL 2458356, at *5 (N.D. Cal. June 16, 2021); *Nadhar v. Renaud*, No. 21-cv-275, 2021 WL 2401398, at *4 (D. Ariz. June 11, 2021). It may be some sort of benchmark, but the Court declines the plaintiff's invitation to impose it as a deadline. *See Kurakula*, 2021 WL 308189, at *4.

And even if the 180-day standard is considered in the plaintiff's favor, and the plaintiff is given the benefit of factors relating to the important interests at stake for the applicants, the Court is particularly troubled by the effect of expediting action on other agency activities.[7] The Court is hard-pressed to think of any remedial measures that wouldn't necessarily prioritize employment-based green card applications over others—such as, for instance, family-sponsored applications, diversity visas, H-4 visas or employment authorizations, or any one of the other myriad of "immigrant benefit application[s]" that § 1571(b) would presumably suggest should *all* be processed within 180 days. The Court's docket is, in fact, full of plaintiffs claiming that USCIS isn't moving with the alacrity they think they deserve. *E.g. Kurakula*, 2021 WL 308189, at *4. And perhaps they all deserve better, but the Court isn't well positioned to sort out their implicitly competing claims.

---

[7] To be clear: to the extent the plaintiff asked for that relief, it's been mooted by the end of the fiscal year. As the Court previously explained, at this point the plaintiff really can't get *any* of what was asked for. To evaluate the claim on its merits, then, the Court has to assume that perhaps now the plaintiff might ask for something different.

The plaintiff simply doesn't acknowledge this factor, *see* filing 32 at 19-21, and the Court is ill-suited to address it. Where the plaintiff's claim rests on the *TRAC* factors, and the potential for interference with other agency priorities is obvious from the nature of the claim, it seems incumbent on the plaintiff to allege facts suggesting that any remedy imposed on the agency won't simply force other equally deserving people to bear the burden of limited agency resources. The plaintiff didn't do so here.

And finally, while the Court need not find impropriety to find unreasonable delay, *see TRAC*, 750 F.2d at 80, it is relevant that the plaintiff hasn't alleged anything to suggest USCIS is delaying its consideration of the plaintiff's application in bad faith. There is, in fact, a tension between the plaintiff's allegation that the COVID-19 pandemic changed the world enough to create an unprecedented opportunity for employment-based green card applicants, but unwillingness to concede that those same circumstances—both the flood of applications and the pandemic itself—might have understandably taxed the agency's resources. The government's evidence describes the difficulties faced, and remedial measures taken, by USCIS to address the backlog. *See* filing 28-4. It's enough to note, however, that no malice or other bad faith is sufficiently alleged by the plaintiff.

On balance, even conceding that long delays in the approval process implicate important interests for the plaintiff, and using § 1571(b) as a guideline for the timely processing of such applications, it's difficult to see how the plaintiff will be able to establish *unreasonable* agency delay. There is "no indication that the deliberative process of the government officials in this case is a sham[,]" their decision-making in this area implicates a number of competing interests, and the decisions are completely discretionary. *See Irshad*, 754 F.3d at 607-08. On balance, the Court finds little likelihood that

the plaintiff would succeed in showing unreasonable agency delay, even if the Court had jurisdiction to consider the claim.

The plaintiff's final claim doesn't rest on delay—rather, the plaintiff contends that USCIS should reserve a green card number for each applicant at the time of application, as it does with applications for other documents. Filing 11 at 43-44. But the plaintiff points to no statute or even regulation that requires such allocation, much less anything suggesting that failure to do so is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). That's a narrow standard of review: if an agency's determination is supportable on any rational basis, it must be upheld. *Org. for Competitive Markets*, 912 F.3d at 459. And as the government points out, there's a clear rational basis for not holding employment-based green cards at the time of application: the statutory directive that at the end of the fiscal year, unused employment-based green cards roll over into another program. Filing 35 at 4-5 (citing § 1151(c)(1)(A)). "Reserving" an unused visa for an applicant past the end of the fiscal year would, in fact, be unlawful. Accordingly, the Court finds little likelihood of success on this claim either.

### (b) Threat of Irreparable Harm

As explained above, the Court finds that the plaintiff has failed to show enough of an injury even to confer standing to sue. It's axiomatic, then, that the plaintiff hasn't shown *irreparable* harm. A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).

For the reasons explained above, the harm isn't actual here. And the question is whether irreparable injury is *likely* in the *absence* of an injunction. *Winter v. Nat. Res. Defense Council, Inc.,* 555 U.S. 7, 22 (2008). The implication of that proposition is that an injunction should not issue where the allegedly irreparable injury would occur despite the injunction. Accordingly, "[i]t is black letter law that an injunction will not issue when it would be ineffectual." *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1123 (5th Cir. 1985). And here, as explained more thoroughly above, the Court's options are limited, so there is nothing to show that any of the remedies sought by the plaintiff would actually produce a result in the plaintiff's favor.

### (c) Balance of Harms and Public Interest

Finally, the Court must consider the balance of harms between the parties, and the public interest. *See Dataphase*, 640 F.2d at 114. Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24. But even if some injury to the plaintiff is conceded, the public interest weighs against the Court's interference with the complicated task of balancing agency priorities—at least, where both the injury and the Court's ability to remediate the problem are speculative. The public interest might be served by recapturing green cards for deserving applicants, but the public interest might also be harmed by prioritizing those applicants over other, at least equally deserving applicants for immigration benefits. These remaining factors do not particularly help the plaintiff, and certainly do not help enough to overcome the plaintiff's low likelihood of success on the merits and failure to demonstrate irreparable, remediable injury.

In short, even if the plaintiff managed standing, subject-matter jurisdiction, and a claim for relief, the Court's assessment of the equities would weigh against preliminary injunctive relief.

IV. CONCLUSION

None of this is to say that USCIS couldn't have done better—even USCIS would likely admit that. *See* filing 28-4 at 5-7. And it's quite unfortunate that absent Congressional intervention, many green cards may go unused. But as a practical matter, that happened last week, and this case was mooted as a result. Nor is there anything here to show that *the plaintiff's* application for adjustment of status depends on anything the Court could or couldn't have done. And beyond that, what the plaintiff is complaining about is a discretionary decision that's outside this Court's jurisdiction to review, based on both the APA and INA. Accordingly, the Court will grant the government's motion to dismiss.

IT IS ORDERED:

1.   The plaintiff's motion for preliminary injunctive relief (filing 19) is denied.

2.   The government's motion to dismiss (filing 28) is granted.

3.   The plaintiff's complaint is dismissed.

4.   A separate judgment will be entered.

Dated this 5th day of October, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge